## Lea's Appeal.

Under the act of 1843, non-releasing creditors are not entitled to dividends under an assignment in trust for such creditors as shall release.

From the Common Pleas of Philadelphia.

*Jan.* 19. On the 14th January, 1845, Sharpless and another made a general assignment to Lea and another, in trust to sell and pay the proceeds to such of the assignors' creditors as should execute a release before 12 o'clock M. on the 7th February, 1845. The auditor and court distributed the fund to all the creditors, as well the non-releasing as those releasing; and this appeal was taken.

It did not appear where the creditors resided.

*Serrill* and *P. McCall,* for appellants.—The assignment is not within the meaning of the act, "to prefer one or more creditors," for it extends the benefit to all on equal terms. It does not exclude any creditors. It is perfect when executed, and valid, and not remaining *in fieri* until the time has elapsed. Should any creditors be excluded, it will be by their voluntary omission. The intent of the act is to prevent preferences, and that intent only can be enforced. Whether stipulations for a release should be allowed, is for the legislature. Both of these practices have prevailed from the earliest judicial history of the state, and have always been considered as distinct by the profession and community. The act allows preferences for the wages of labour, but that must be by apt words in the instrument; this shows that immediate and not constructive preferences were aimed at. The act was

intended to strike at the right of capricious preferences by putting all on an equality; and this is the effect of this assignment, as was said in 2 Binn. 186. How can there be a preference without a design to do so? and how can the creditor know who will release? If all or if none release, there will be no preference. The point was decided in 2 Barr, 148, n.; Blakey's Appeal, 7 Ib. 449, is also an authority that the act of preference must be included in the assignment.

*Morris* and *Tyson*, contrà.—The case in 2 Barr was on the ground that the bankrupt act was in effect incorporated in the assignment; the parties ratified it, instead of going into bankruptcy and avoiding it. The benefits of the act will be but partial, on the construction contended for. In this case but twenty-three days were allowed, to the creditors, which is unreasonably short, as many reside out of the commonwealth. The act is a legislative construction, that all future assignments "shall enure to the benefit of all the creditors." By this means preferences are within the control of the debtor. His foreign creditors may never hear of the deed, or may be unable to comply with it. By making the time sufficiently short, domestic creditors can always gain a priority. The stipulation is a preference within the act, and the right to make it is consequent upon the right to prefer. It is so styled in 2 Binn. 181, and so treated in 1 Edw. Ch. 451, 5 Raw. 224, 3 Law J. 213, 6 Law Rep. 318, 411. Clearly, those who do not release are and were creditors. How, then, can it be said to enure to all creditors, if they are excluded? The assignment is *in fieri*, at least until some one releases. Should all refuse, it is a nullity—from its perfection a preference is given. It is plain, then, that practically a preference is thus given.

2. The right to prefer was based upon the right of paying in the order of the debtor's choice, and the right to stipulate for a release has always been based on the right of preference: 4 Mason, 206; 5 J. C. R. 329; but the clearest and most complete exposition is found in Thomas *v.* Jenks, 5 Raw. 224, where it is said, "the basis of it is the admitted right to prefer one creditor to another;" and "he may set his price upon it, provided it does not extend beyond a mere preference;" and again: it is "an exercise of his right of preference."

*Jan.* 29. BURNSIDE, J.—The question presented in this case is, whether a debtor who by deed conveys all his property to assignees for the benefit of his creditors, can stipulate for a

release, since the passage of the "act to prevent preferences in assignments," April 17, 1843, p. 273; Dunl. 896. The act declares " that all assignments of the property in trust, which shall hereafter be made by debtors to trustees on account of inability, at the time of the assignment, to pay their debts, to prefer one or more creditors (except for the payment of wages of labour), shall be held and construed to enure to the benefit of all the creditors, in proportion to their respective demands; and all such assignments shall be subject, in all respects, to the laws now in force relative to voluntary assignments." The law then in force, and well settled, allowed the debtor to stipulate for a release, even when he had given preferences in his assignment: Lippincott v. Barker, 2 Binn. 174; 4 Wash. C. 232; Schuylkill Nav. Co. App., 2 Barr, 148, n. When the act was passed, the law was settled and long held, that a preference given to one or more creditors, in exclusion of the rest, was valid: 4 Dall. 85, in note; 2 Binn. 186; 13 S. & R. 132. A careful examination of the act shows the legislature studiously avoided making any change in the law relating to voluntary assignments, as it was then understood and settled, except in the one particular, that there should be no preferences given in assignments, *but in every other respect they should be subject to the law then in force.*

The act did not make the assignment void, but said it should be held and construed for the benefit of the creditors.

This is the only provision in the act. Hence, in Blakey's Appeal, 7 Barr, 449, it was held that judgments confessed to secure creditors are not such preferences as are avoided by the act of 1843, although an assignment for creditors was intended, and was shortly afterwards executed. This case goes far in principle to settle the case under consideration. The legislature knew that the stipulation for a release was in accordance with the spirit of the bankrupt laws of the commercial world, and with the spirit of the age, that where an unfortunate debtor surrenders all his property to his creditors for their benefit, he ought to be allowed to begin the world again untrammelled, for his own benefit and that of his family. They made but the one provision in the act; and to prevent a latitudinarian construction of this one, they declared that all such assignments shall be subject, in all respects, to the laws now in force relative to voluntary assignments. If these creditors all released there would be no preference, and each determines for himself whether he will accept of the terms of the deed of assignment, it having been settled in the Schuylkill Navigation

Company's Appeal, that no creditor should be allowed a dividend who did not release. We therefore think the auditor and the court were in error. They ought to have awarded the whole fund to the releasing creditors. In all cases where a release is required, a reasonable and fair opportunity is to be given by the requirements of his deed to come in and release, or the assignment would be fraudulent. We cannot say that such an opportunity was not given in this case.

Decree reversed, and record remanded.