7    449
187   159

## BLAKEY'S APPEAL, In re JENKS.

*Judgments confessed to secure creditors are not such preferences as are avoided by the act of 1843, although an assignment for creditors was intended, and was shortly afterwards executed.*

FROM the Common Pleas of Bucks.

*March* 27. On the 7th of Feb., 1846, judgments were entered against Jenks, on warrants of attorney, dated on the 4th. On the 17th, he made an assignment for his creditors, and the question was, whether the judgments were entitled to a preference out of the proceeds of the real estate. It was proved to have been the intention of the assignor, to prefer certain of his creditors, by means of these judgments. And it was admitted by him, that on the day of the making of the warrants, he had spoken to counsel about drawing an assignment. It was also proved that previously, he had said he would have to do this. He denied, however, that such was his intention at that time.

The court awarded the fund to the judgment creditors.

*Dubois*, for appellants.—The spirit and object of the act is to be looked to, and that is to abolish preferences by persons in failing circumstances. It is merely, then, a question whether the assignor designed by this means to give such a preference—and that is proved. The intervention of a few days is immaterial, as the various acts were but means to distribute his property unequally among his creditors: 6 Whart. 214; 1 Bland, Ch. 425; 6 East, 257; 3 Watts, 230; 4 Halst. 121; 3 Met. 512; 8 Paige, 556.

*Ross*, contrà.—The consequence would be, no failing debtor could pay a debt, or effect a compromise, or borrow money. The act is plain—preferences must, to be within it, be given by an assignment in trust, for the benefit of creditors. Preferences were never illegal: 16 Peters, 106; 7 Wheat. 556; 11 Wheat. 78. Nor has there been shown any connection between the judgment creditors and the assignment. Certainly a future act of the debtor, to which the creditors were not parties or privies, cannot affect their security, admitted to have been valid until that act.

*April* 7. COULTER, J.—It is clear enough that Joseph Jenks, at the time he gave the judgments, had within his mind the apprehension that he would be compelled to assign his property for the benefit

of creditors, under the statutes. He thought, however, that he could evade the storm, if they gave him indulgence. The question is, whether the judgments confessed to certain creditors, who had befriended him without receiving any benefit, are void, under the provisions of the act of 17th April, 1843. The judgment bonds were given on the 4th of Feb., 1846, and entered on the docket on the seventh of the same month; the assignment in trust for the general creditors was executed on the seventeenth of that month. It is true, that instruments of writing, executed at different times and on separate pieces of paper, are often construed as if they were the same, in order to effectuate what was the clear intent and understanding of the parties. Such, for instance, as an absolute deed, and a defeasance; both will be construed together so as to constitute a mortgage, where the intent of the deed was to secure a loan, or advance of money. And a small space of time is sometimes annihilated, so as to constitute two acts a unit; but that is where such was the intent of the parties, and it was not an actual fraud upon any other person. Such was the case of Love v. Jones, 4 Watts, 465. Cases of that class, however, are altogether different from the one under consideration, and give no warrant whatever for holding, that the judgments and assignment were one and the same transaction, as contended for by the appellants, because there was not present the design or understanding of the parties that they were to be so regarded, but on the contrary, the intent was, that each was to produce its own result, and regulate the rights of different parties; the parties to the judgments being different from the parties to the assignment. The other ground assumed by the counsel for the plaintiff in error, i. e., that the judgments were, in contemplation of law, a legal fraud on the act of 1843, and are, therefore, void, has more colour in it. But to make even this ground plausible, he must connect the judgments in identity and unity of act with the assignment; for the act of 1843 only makes the preferences, *which are given in the assignment*, of no effect. Before the act of 1843, preferences were given in the deed of assignment, and were good prior to the passage of the act of June, 1836, by the judgments of our courts. And that act expressly recognised such preferences. For it related to, and provided for, assignments in trust for creditors, or *some of them*. We may safely assume, therefore, that the act of a debtor, in failing circumstances, giving preference to some of his creditors, is not in itself immoral or tainted with actual fraud.

When a positive statutory enactment forbids it, as against gene-

ral policy, of course, its provisions will be observed by this court. But we cannot go farther, or beyond the statute. The act of 1843 provides that all assignments, in trust for the benefit of creditors thereafter to be made, which prefer one or more creditors, shall be construed to enure for the benefit of all in proportion to their demands. It is only when a man loses dominion over his property and transfers that dominion to another, that the right of the creditors to a *pro rata* dividend attaches. Whilst a man retains dominion of his property, he may encumber and convey it as he pleases, if not directly forbidden by law, and prefer such creditors by payment or transfer as he chooses. And if it were not so, an individual could not get along in his business. The statute of Elizabeth interposes its provisions for the protection of the creditor, where the debtor, for a fraudulent purpose, of hindering, delaying, or cheating his creditors, transfers his property;—nothing of that kind exists here. It is acknowledged that the transaction was *bona fide* and without the slightest tinge of fraud.

The bankrupt act of 1841 provided, that all payments, transfers, conveyances, &c., made by any person with design to prefer one or more creditors over the general creditors, should prevent the discharge of such person under the provisions of that act, and should be construed a fraud upon the act; but contained a proviso that all such payments, transfers, conveyances, &c., made more than two months before the application, should be good and valid. But that act passed away before the breath of the people, and this court cannot engraft one of its principal peculiarities by analogy upon our statute of 1843. Preferences in the *deed of assignment itself* are made inoperative by our statute, but there the provision ends; and there, perhaps, it ought to end. But when the legislature, in their wisdom, see fit to adopt the principle of the bankrupt act, they will doubtless fix the period, anterior to the deed of assignment, when payments, transfers, &c., made *bonâ fide*, shall be valid. For any reason apparent to this court, under the existing state of things, ten days is as good as two months. But the bankrupt system, in order to be useful and acceptable, ought to carry all its distinctive features together. The feature of preventing payments to creditors for a period of two months, and thus crippling a man and making him paralytic for a time, would only be compensated by the other distinctive characteristic—a total discharge of the debtor from all future liability.

The decree of the court is affirmed.