Arthur B. Huey *v.* Abraham C. Prince, Harry E. Keller, Trustee, and George G. Pierie and Harrison G. Seeler, Assignees for the benefit of Creditors of L. H. Taylor & Co., Appellants.

*Assignment for creditors — Special assignment — Preferences — Act of March* 24, 1818.

Under the Act of March 24, 1818, 7 Sm. L. 132, sec. 5, where there has been an unrecorded assignment for certain creditors followed by a general assignment for all creditors, the fund passing by the unrecorded assignment is not subject to levy on attachments issued on judgments obtained after the recorded general assignment: Seal v. Duffy, 4 Pa. 274, and Weber v. Samuel, 7 Pa. 499, overruled.

*Assignment for creditors — Preferences — Acts of April* 17, 1843, *and April* 16, 1849.

Under the acts of April 17, 1843, and April 16, 1849, an assignment of certain property of the assignor in trust for the benefit of certain preferred creditors, preceding a general assignment for all creditors, is void. Such property will vest in the general assignee immediately upon the execution of the general assignment, and the latter's right to the property is not affected by subsequent judgments and attachments of the preferred creditors.

Argued March 28, 1898. Appeal, No. 65, Jan. T., 1898, by defendants, from decree of C. P. No. 4, Phila. Co., March T., 1897, No. 282, on bill in equity. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity in the nature of an interpleader bill to determine the rights of the parties to certain funds in dispute.

The facts appear by the opinion of the Supreme Court.

The court, in an opinion by WILLSON, J., entered the following decree:

1. And now, this twenty-ninth day of January, 1898, the above entitled case having come on for hearing, and having been argued by counsel upon the bill of complaint and the answers of the several defendants, the court upon consideration thereof doth enjoin the defendants, Abraham C. Prince and Harry E. Keller, trustees, from the further prosecution of the writs of attachment execution in which the complainant, Arthur B. Huey, is named as garnishee, issued by the said Abraham C Prince upon a judgment entered in this court as of March term, 1897, No. 282, and by the said Harry E. Keller, trustee, upon a judgment entered in the court of common pleas, No. 1, of March term, 1897, No. 1016.

2. The court doth further adjudge and decree that the funds in the hands of the said Arthur B. Huey, trustee, realized from the collateral referred to in said bill in exhibit " A " are subject to said writs of attachment execution, and that as against said writs of attachment execution issued respectively by said Abraham C. Prince and the said Harry E. Keller, trustee, the defendants, George G. Pierie and Harrison G. Seeler, assignees for the benefit of creditors of L. H. Taylor & Co., are not entitled to the funds in the hands of the said Arthur B. Huey, complainant in the case.

3. The court doth order and decree the said Arthur B. Huey to appropriate said funds in his hands as trustee, as recited in the bill, after payment of the costs of this cause and the expenses of said complainant as trustee, an allowance being made to said complainant as trustee at the rate of five per cent upon the amount of the fund in the hands of said complainant, which allowance shall cover both the compensation and expenses of said trustee, first to the payment of the judgment obtained by the said Abraham C. Prince against L. H. Taylor & Co. in the sum of $9,442.71 with interest thereon from April 15, 1897, and costs, as of March term, 1897, No. 282, and that subject thereto the said Arthur B. Huey do appropriate the balance of said fund to the payment of the judgment obtained by Harry E. Keller, trustee, against L. H. Taylor & Co. in the sum of $47,655.62 in the court of common pleas No. 1, as of March term, 1897, No. 1016.

*Error assigned* was decree of the court.

*C. Berkeley Taylor*, with him *Charles F. Gummey, Jr.*, and *Henry P. Brown*, for appellants.—The facts of Weber v. Samuel arose prior to the act of 1843, and although those of Seal v. Duffy arose after that act it was not mentioned in the opinion of the court and does not seem to have figured in the decision. The act of 1843, and its supplement, the act of 1849, made a great change in the whole law relating to voluntary assignments in Pennsylvania, those acts providing for the first time that an assignment containing preferences should enure to the benefit of all the creditors of the assignor.

As a reason why the later cases of Kern and Powell and Dickson and Company's estate have adopted a different rule from Seal v. Duffy and Weber v. Samuel it is suggested that, prior to the act of 1843, and its supplement, the act of 1849, there was no general legislative system looking to the protection of the creditors of an insolvent as a class, for the reason that assignees might be for a few as well as for all creditors, and therefore it was a race for precedence. The assignor would confess judgment or make an assignment with preference, or to protect releasing creditors. This being the case, the courts' construction of the act of of 1818 leaned toward protecting the

most diligent creditor. The act of 1843 was passed to prevent an assignor from preferring creditors in the assignment itself, but even that act when first before the Supreme Court was not regarded as prohibiting an assignment in favor of named parties, as was pointed out by the Court in Miners' National Bank's Appeal, 57 Pa. 193.

In Trickett on Assignments, page 43, it is stated in a note that the case of Kern v. Powell was directly opposed to Seal v. Duffy, and we are unable to reconcile the doctrine laid down in the two cases, but earnestly urge the court that it is much more in accordance with the decisions and the tendency of the acts of assembly in Pennsylvania to distribute an assigned estate equally among the creditors, and when a first assignment fails, because not recorded, the property thereby assigned should vest in a subsequent assignee, because the first assignment is void as to him, he being the representative of all the creditors. By adopting this rule, the same system applies to trustees both in insolvency and voluntary assignees ; and the act of 1818, where it provides that assignments not recorded within thirty days shall be null and void as against any of the creditors of the assignor, will be construed in the liberal spirit of the act of 1843 and its supplements.

*Richard C. Dale*, for appellee.—We respectfully submit that the rule of law in Pennsylvania is well established that an assignment of property in trust for the benefit of creditors passes the legal title to the same to the assignee ; as against a subsequent assignee the title of the first assignee is good, even though he fails to record the assignment within the thirty days prescribed by the statute. But as against the creditors of the assignor who by proper proceedings in execution levy upon or attach the assigned property, the assignment not having been recorded as prescribed by the statute, is voidable, and such judgment creditor by proper process of execution may subject the assigned property to the payment of the judgment. This is the view adopted in the opinion of the learned court below, and we respectfully submit that its judgment should be affirmed : Seal v. Duffy, 4 Pa. 274; Golden's App., 110 Pa. 581 ; Weber v. Samuel, 7 Pa. 499 ; Moncure v. Hanson, 15 Pa. 385 ; Chaffees v. Risk, 24 Pa. 432 ; Wright v. Wigton, 84 Pa. 163 ; Thomas v. Phillips, 9 Pa. 355 ; Dickson & Co.'s Est., 166 Pa. 134.

OPINION BY MR. JUSTICE DEAN, July 21, 1898 :

On December 20, 1895, L. H. Taylor & Company, brokers, by writing under seal, assigned to Arthur B. Huey certain book balances and equitable demands payable to the partnership, in trust, to divide the amount pro rata among certain specified creditors, whose names appeared on a list attached to the assignment. This assignment was not recorded. The next day, the same partnership made a general assignment for the benefit of its creditors, to George G. Pierie and Harrison C. Seeler, which assignment was duly recorded the day following. The assignee under the unrecorded assignment collected a sum exceeding $30,000, which was claimed by the assignees for the general creditors. Of this amount $9,442.21 was asserted to belong to Prince, one of the assignees under the unrecorded assignment, individually, not only by virtue of the assignment, but because he had obtained a judgment for that amount against L. H. Taylor & Company, more than a year after the assignment, on which judgment an attachment was issued and levied on the funds collected under the unrecorded assignment. The balance of the $30,000 was held for the other creditors named in the list appended to the writing, which was also attached by Harry E. Keller, trustee, under a judgment confessed to him as trustee, for them more than a year after both assignments.

This bill was filed for the purpose of determining the right of the assignees for general creditors to the fund. There was no dispute as to the facts, and the cause was argued in the court below on bill and answer. The fund was awarded, first, to the judgment of Abraham C. Prince, and the balance to the judgment of Harry E. Keller, trustee. From that decree the assignees for the general creditors bring this appeal, assigning for error the decree.

The question is, what is the legal result of the failure to record the first assignment of a particular part of the estate for the benefit of particular creditors? The learned judge of the court below, following Seal v. Duffy, 4 Pa. 274, and Weber v. Samuel, 7 Pa. 499, held, that the fund passing by the unrecorded assignment was subject to levy on attachments issued on judgments obtained after the recorded general assignment. The decision is clearly right, if those cases ought to rule the question. There has been no decision by this Court since they

were announced which expressly overrules them.    But the court below, in the case before us, and this Court, in decisions following them, have had some difficulty in reconciling those cases with the express declaration of the statute.    The 5th section of the act of March 24, 1818, 7 Smith's L. 132, provides: "All assignments so as aforesaid to be made and executed, which shall not be recorded in the office for recording of deeds in the county in which such assignor resides, within thirty days after the execution thereof, shall be considered null and void as against any of the creditors of said assignor."    The statute is explicit, the assignment is "null and void as against any of the creditors of said assignor."    Whether, for any purpose, it is good as between assignor and assignee it is not important to inquire, for that is not our case.

The first case between contending creditors which called for a construction of the statute, was Seal v. Duffy, supra.    It is badly reported, the facts not being fully or clearly stated.    It would seem, however, that Duffy, on a judgment against Taylor & Company, issued an execution and levied on the property of defendants.    On the same day that the execution was issued, June 18, Taylor & Co. made a general assignment in trust for creditors generally, which was not recorded; two days after, on June 20, they assigned all their property to Seal for the benefit of all releasing creditors.    Other creditors, with notice of the assignment to Seal, then issued executions and levied on the property seized on Duffy's execution, subject to his levy.    The sheriff sold the property and paid the money into court; feigned issues were awarded to determine the rights of the claimants. Duffy's judgment was found by the jury to be fraudulent, which eliminated him from the contention; it was further found as a fact that Taylor, the assignee under the first deed, although he had not recorded it, had accepted the trust.    The court decided that the neglect to record the deed could only be taken advantage of by the execution creditors who levied on the property subject to Duffy's execution; that Seal, the second assignee, could not, as against them, take the fund.    Seal appealed to this Court, and it was decided that the legal effect of the unrecorded assignment to Taylor was to vest in him, the moment the deed was delivered, title in all the property intended to be conveyed, and thereby created him a trustee for the credit-

ors; that equity would not suffer the trust to fail by reason of his neglect to record the deed and, without a reconveyance, there was no estate in the assignor which passed to Seal by the second assignment, although it was upon the same trusts. In considering the express terms of the act of assembly, the Court says: "The language is, 'as against any of the creditors,' by which is to be understood, as against any one who may elect to make the objection in the only effectual mode in which it can be made, namely, by judgment and execution levied. . . . This restrained construction satisfies the terms of the statute, while it still leaves the deed operative so long as anything remained upon which it can operate, and is so far consonant with the equitable rule which forbids the destruction of a trust without the consent of all interested in it. The opposite construction asked for by the plaintiff in error would be a statutory cancellation of a deed of trust. . . . This would be contrary to the rudimental law of property, and there being nothing in the statute which compels us to this extreme we cannot agree to give it our sanction."

This case was heard before four of the five justices then constituting the court, GIBSON, C. J., ROGERS, COULTER and BELL; BURNSIDE was absent. In less than two years thereafter the case of Weber v. Samuel, 7 Pa. 499, came up for trial before ROGERS, J., at nisi prius, one of the justices who sat in Seal v. Duffy. The main contention was as to the effect of an unrecorded assignment as to general creditors, and this was his instruction to the jury: "Was, then, the deed (the unrecorded one) of March 22, 1837, void? This is a question of law, and I instruct you that it is void, because it was not recorded in pursuance of the act of March 24, 1818. . . . That this case falls within the letter of the act cannot be doubted, for it applies to voluntary assignments such as this, and makes it the duty of the assignee to have it recorded in the county where the assignor resides." On appeal, the majority of the Court reversed this ruling, mainly on the authority of Seal v. Duffy, supra; GIBSON and ROGERS dissenting, and concurring with the construction of the act in Justice ROGERS's charge. While they do not expressly so state, the only inference is, that in less than two years after Seal v. Duffy was decided, two of the four justices who concurred in the decision had changed their minds.

We do not notice this for the purpose of negativing the binding force of the decision, but to call attention to the absence of an unwavering conviction in the judicial mind, at that time, as to the soundness of the construction put upon the statute in Seal v. Duffy. In Kern v. Powell, 98 Pa. 253, Kern on March 28, 1877, assigned certain property to his son in trust for assignor's wife; the deed was not recorded; a few days afterwards he made a general assignment to Powell for benefit of general creditors, which was duly recorded. The first assignee consented that the second should sell all the property and account for the proceeds of that conveyed to him by the unrecorded assignment. After sale the second assignee declined to pay, and the first brought suit. This Court held that noncompliance with the act of 1818 made the first assignment void as to all the creditors represented by the second assignee, and that all the property passed to him, because he had recorded his deed in compliance with the act. In Dickson & Co.'s Estate, 166 Pa. 134, the same question on the same facts was ruled on the authority of Kern v. Powell. We concede that Seal v. Duffy has been many times cited by counsel and sometimes by this Court as authority since its announcement. Sometimes, too, without mentioning it by name, the decisions, as in the last two cases, have been in direct conflict with it. The argument of appellee's counsel, that these two, apparently, conflicting decisions are distinguishable from Seal v. Duffy on their facts is to some extent correct, but the main fact is, that they could not have been decided as they were without giving an opposite interpretation to the statute from that announced in Seal v. Duffy.

It appears to us that the decision was not free from doubt in the minds of all the eminent justices who pronounced it. Even where adhered to since, its soundness has been most ably questioned by the profession, and more than one judicial decision was in the teeth of it, although not expressly overruling it. There is no reason why we should give a strained construction to the act of 1818 in favor of execution creditors. The assignors, here, first sought to prefer certain creditors by the assignment; this, doubtless, they discovered would, under the act of 1843, inure to the benefit of all the creditors; then, impliedly treating the assignment, themselves, as void, long after it was made, after the general assignees had filed their first account

and an auditor had been appointed, the assignors confess judgments to the preferred creditors, the attachments are issued and the fund levied upon. The injustice this would work to the whole body of creditors, by thus withdrawing over $30,000 from them and giving that large sum to a special few, is palpable. We think the act of 1818 should be construed according to the intent so plainly manifested by its words. The first deed not being recorded within thirty days from its execution must " be considered null and void as against any of the creditors of the assignor," whether execution creditors or not. This, of course, overrules Seal v. Duffy, supra, and the case of Weber v. Samuel, supra, which immediately follows and rests upon it, in the construction of the act of 1818. In following Seal v. Duffy, the learned judge of the court below erred because this Court erred in its first interpretation of that act. We deem it proper to settle once for all the conflict between Seal v. Duffy and many of the cases following it, and perhaps others which may be decided in the future, by formally overruling it and its companion, Weber v. Samuel.

But, aside from this, we think the decree of the court below ought not to stand. On the subject of assignments by insolvent debtors, dating from the decision in Seal v. Duffy, the judicial and legislative mind seems to have been somewhat antagonistic. The resolution of January 21, 1843, the acts of April 17, of same year, of April 16, 1849, of April 22, 1854, and of February 17, 1876, all seem to have been intended to overrule or modify judicial decisions. But the act of 1843 is the one which touches directly the case before us. It declares that: " All assignments of property in trust, which shall hereafter be made by debtors, to trustees, on account of inability at the time of the assignment to pay their debts, shall be held and construed to inure to the benefit of all the creditors, in proportion to their respective demands." This was followed by the decision in Blakey's Appeal, 7 Pa. 449, that the act did not prevent the debtor preferring creditors by judgment before the assignment, and in Lea's Appeal, 9 Pa. 504, that it did not prevent him from inserting a stipulation in the deed for a release from the creditors to be benefited. The latter case prompted the act of 1849, which declared, that such stipulation should be

held as a preference and inure to the benefit of all the creditors. This left untouched just one mode of preference, that by judgment before assignment, which has stood to this day.

While the act of 1843 was in force when Seal v. Duffy and Weber v. Samuel were decided, it was not referred to by either court or counsel. In Weber v. Samuel the facts all arose before the passage of that act, in Seal v. Duffy, afterwards. Whether the assignment, which is not printed, by its terms, did not bring it under the act of 1843, or whether its application was not noticed, we cannot tell; we can say that it had no effect on the decisions. But assuming that the court correctly decided that, under the act of 1818 the first and unrecorded assignment was voidable only at the suit of an execution creditor, how it would have decided had the act of 1843 been invoked by the assignee of the general creditors whose deed was recorded, is not decided. That is now the case before us. The assignment to Huey is on its face a preference; it says: " The intent and purpose being, that having respect to the superior claims of these depositors everything realized from the said accounts is to belong to and be divided among them." This preference assignment, it will be noticed, is dated December 20, 1895 ; the general assignment is dated the day after ; the attachments were not issued until sixteen months thereafter. In whom was the title to the property by the very fact of preference ? The act of 1843 says such preference shall, inure to the benefit of all the creditors. It seems to us, the moment the general assignee qualified he had the right to demand and receive this property assigned to promote a preference; no judgment long subsequent, nor any attachment upon it, could affect the right of the general creditors, for in the eye of the law it belonged as completely to the general assignee as any other chose in action, for he was the representative of all the creditors, and was bound to protect their rights : Irwin v Keen, 3 Wharton, 347. To hold otherwise the very object of the statute might be defeated. For illustration, a debtor discovers his inability to pay his debts ; suppose, as argued by appellee, he can withdraw from his general creditors by a preference assignment, specific property for the benefit of favored creditors, and although the assignment is not recorded, it is only voidable on attack by an execution.

creditor; the debtor, then, at his leisure, may confess judgment to the favored creditor, and he only has the right to touch the property thus withdrawn. If this be correct, there is nothing to hinder the debtor from pursuing the same plan with all his property; that is, from assigning it in separate parcels to separate assignees, and thereafter confessing judgment that it may be seized and appropriated in the order and degree of his favor. Such a construction of the act of 1843 cannot be sustained. And so this Court, in substance, held, in National Bank's Appeal, 57 Pa. 193. In that case, Miller, the assignor, conveyed a part only of his property to assignees in trust to sell the same and pay the proceeds to certain named creditors, among them National Bank, appellant, any surplus to be paid to the assignor. Creditors not preferred claimed to share pro rata in the fund. The court below held this to be an assignment because of inability to pay debts, and allowed the creditors not named in the preferred list to come in on the fund. The bank appealed to this Court, and the decree of the court below was affirmed, AGNEW, J., saying, the act was palpably intended to prevent the very preference made in the assignment, and thus placing the assignor's property beyond the reach of all the creditors. The creditors in this case who asserted a right to share in the fund were not execution creditors, and had been impliedly excluded from the particular property, by not being in the preferred list. If they had a right in the assigned property, it accrued the moment the conveyance was made embodying a preference. Neither judgment nor execution would have strengthened this right. It arose immediately when the assignor, by reason of his inability to pay his debts, committed the act which the statute declared gave them the right. In our case the claim is made by the qualified representative of all the creditors, and he is the proper party to make it. It is clear to us that the preference set up cannot be successfully enforced in face of the act of 1843. The subsequent judgments and attachments of the preferred creditors in no way helped the situation as to them; there was nothing remaining in the assignor; all his right, title and interest had passed to his assignees for creditors generally by the conveyance and the provisions of the act of 1843. Therefore, they are entitled to the money for distribution among all the creditors.

The decree is reversed, and it is ordered that the fund in dispute be awarded to George G. Pierie and Harrison C. Seeler, assignees for general creditors.

Costs of this appeal to be paid out of the fund.