## Read *against* Robinson.

6ws329
158    63|

Ordinarily chancery executes only a trust sufficiently formed to put the legal estate out of the grantor, or an agreement for a trust founded on a valuable consideration and not a mere voluntary one; and creditors are but volunteers.

A common law conveyance given to an agent for transmission to the grantee vests the title in the grantee forthwith, though ignorant of the transaction, and by his rejection of it the title revests in the grantor.

Where one executed a voluntary assignment in Montgomery county for the benefit of creditors with preferences and handed it to his son to take to Philadelphia to a third person, who called with it on the assignee in Philadelphia and desired him to take it, but he refused to have anything to do with it; *held* that a presumption arose from the nature of the case that the deed was tendered by authority of the grantor.

In such case the Court of Common Pleas has power to substitute another trustee under the 23d section of the Act of 14th June 1836.

A deed of trust may be taken to be recorded by creditors for whose use the estate is conveyed by it, or any party interested in the trust.

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action of trover and conversion brought by Thomas Read, assignee of Thomas Amies, against Samuel L. Robinson, executor of Amies.

The plaintiff offered in evidence a general assignment by Thomas Amies and wife of all his estate and effects to Joseph M. Thomas in trust for the benefit of creditors, dated 28th May 1839, and recorded 25th June 1839. The defendant objected to this offer on the ground that no evidence had been offered of the delivery of the assignment. The plaintiff then called Joseph Amies, who testified that he was one of the witnesses to the assignment. That Thomas Amies, who lived in Montgomery county, handed the assignment to him with instructions to take it to Philadelphia to one Wm. Ward, who had been making out his father's accounts. The assignor did not state for what purpose he was to give the assignment to Ward, but he supposed it was for the purpose of being given to the assignee. Witness accordingly came to town and gave the assignment to Ward. The assignor died June 3d 1839 and Ward in the winter of 1840.

The plaintiff then called Joseph M. Thomas, who testified, " I was acquainted with Thomas Amies. A few days before his death William Ward called on me—he held a paper in his hand—told me that Thomas Amies had made an assignment to me for the benefit of his creditors, and Ward wanted me to take the assignment, which he held in his hand. I know nothing of its contents, I did not take it to my hands. I did not examine it. I told him

vi.— 42                2 c *

I was sorry Amies had made it to me, as it would give him the trouble of making it over again, that I could not attend to it—the estate was in another county and I would have nothing to do with it—I never did act in the assignment; Ward solicited me to act but I refused. Mr Dull, a considerable time after Amies' death, wanted me to go to Norristown about the business but I refused."

The plaintiff then gave in evidence the record of the Common Pleas of Montgomery county, by which it appeared that on the petition of Charles Dull, one of the creditors named in the assignment, setting forth the assignment and that after it was recorded J. M. Thomas had not acted under it, the court on the 18th Nov. 1839 issued a citation returnable on the 18th Dec., to Thomas to show cause why he should not be dismissed from the trust and others appointed in his stead; and on the return day ordered that he should be dismissed from the trust and appointed Thomas Read to execute the trust in his stead.

The plaintiff then gave in evidence a certified copy of the inventory and appraisement of the personal property of Thomas Amies, amounting to $2468.30, made July 8th 1839 by the defendant as executor under his will made prior to the assignment.

A witness then testified that all the goods mentioned in the inventory were in the possession of Amies at the date of his assignment and remained on the premises after his death: that the defendant had possession of and sold them in July 1839 at auction, as executor of Amies' will. (Witness never knew of any one acting under the assignment or taking possession of goods under it.)

The plaintiff then again offered the assignment in evidence. The defendant objected to its admission on the ground that there was no proof of its delivery to Thomas, he having peremptorily refused to receive it as soon as its existence had been brought to his notice. The judge sustained the objection and ordered a nonsuit.

Errors assigned:

1. The court erred in rejecting the assignment when first offered.

2. In rejecting it when offered again, after the adduction of the parol testimony.

3. In directing the nonsuit.

This case was argued at this term by *Haly* and *Meredith*, for the plaintiff in error, and *Hare* and *Rawle*, for the defendants in error, and was now re-argued by

*Meredith*, for the plaintiff in error. The appointment of a new trustee was valid under the 23d section of the Act of 14th June 1836, the trustee named having refused to act. The objection is that the trust was not raised because the deed of assignment was never delivered. We answer, that by the assignment duly executed the estate passed from the assignor to the assignee, and that

the only effect of the refusal was to devest it. This is the settled principle at common law. *Taw* v. *Bury*, (*Dyer* 167 *b.*); 1 *And.* 4; 2 *Leon.* 110; *Cro. Eliz.* 54; *Butler & Baker's Case*, (3 *Rep.* 26 *b.*); *Thompson* v. *Leach*, (2 *Ventr.* 201). In *Anon.* (*Clayton's Rep.* 31, *pl.* 53), it is decided that delivery to a stranger, though not expressly for the use of the grantee, is a good delivery. But chancery would relieve and would consider the estate vested, and if not, would supply a trustee and compel the trustee named to execute a conveyance. It will not allow a trust to fail for want of a trustee, nor permit a trustee to defeat the trust by his dissent. *Rep. temp. Finch* 258.; *Ingram* v. *Porter*, (4 *M'Cord* 198); *King* v. *Donnelly*, (5 *Paige* 46); *Methodist Church* v. *Jaques*, (1 *Johns. Ch.* 450); *Jaques* v. *Methodist Church*, (17 *Johns.* 548); *Nicoll* v. *Mumford*, (4 *Johns. Ch.* 525); *Cumberland* v. *Codrington*, (3 *Ib.* 261); *M'Kinney* v. *Rhoads*, (5 *Watts* 343).

*Rawle*, contra, contended that this was not such a trust as chancery would interfere with to furnish a trustee, being merely a voluntary assignment, *Jerem. Eq.* 20; *Lewin on Trusts* 110; especially where the plaintiff claims preferences, and the defendant as executor for general distribution among all the creditors. Then at law there is no delivery till acceptance by the grantee, nor does the estate pass from the grantor till the grantee assents. 1 *Johns. Cas.* 536; *Jackson* v. *Phipps*, (12 *Johns.* 418); *Verplank* v. *Sterry*, (*Ib.* 536); *Chess* v. *Chess*, (1 *P. R.* 32); *Maynard* v. *Maynard*, (10 *Mass.* 456); *Shep. Touch.* 57. It cannot be pretended there was any delivery here to the assignee, for Ward had no instructions from the assignor, and what he did was a nullity. *Sailor* v. *Hertzog*, (4 *Whart.* 259).

The opinion of the Court was delivered by

GIBSON, C. J.—The ordinary power of a chancellor extends no further than the execution of a trust sufficiently formed to put the legal title out of the grantor; or to the execution of an agreement for a trust founded on a valuable consideration. Such was the doctrine of Lord ELDON in *Ex parte Pye*, (18 *Vez.* 140); *Ellison* v. *Ellison*, (6 *Vez.* 662); and *Pulvertoft* v. *Pulvertoft*, (18 *Vez.* 99); and such too was the doctrine of Sir William GRANT, in *Antrobus* v. *Smith*, (12 *Vez.* 39); and *Sloane* v. *Cadogan*, (*Sugd. Vend. App. No.* 26). According to *Twelves* v. *Williams*, (3 *Whart.* 485), equity would not execute this assignment as an *agreement*, because the creditors are volunteers; but the doctrine maintained by the masterly argument of Justice VENTRIS, in *Thompson* v. *Leach*, (2 *Vent.* 201), and eventually established by the decision of that case in the House of Lords, is that a common law conveyance put into the hands of an agent for transmission to the grantee, takes effect the instant it is parted with, and vests the title though the grantee be ignorant of the transaction; and that the rejection

[Read v. Robinson.]

of such a grant has the effect of revesting the title in the grantor, it would seem, by a species of remitter. On this ground a chancellor would support the trust before us as sufficiently complete in its creation. The difficulty is to comprehend how the remitter can take effect without displacing intermediate interests springing from the rejected deed; but the authorities conclusively prove that it may. VENTRIS refers to Lord COKE's solution (1 *Inst.* 356 *b*) of a difficulty started by LITTLETON, (*Sect.* 677), in regard to a husband's disagreement to a conveyance back to a wife of her discontinued estate, which is held not to intercept the remitter of the wife to her former title; " and the true reason," said VENTRIS, "is because she is in of a title paramount to the conveyance to which the disagreement relates." But how does she get back to her paramount title? If the husband's disagreement to the conveyance from the discontinuee, sweeps the estate which passed by it clean out of her by relation to the date of the deed, there can be no wrongful estate in her from which she may be remitted to her rightful one; and that the remitter can nevertheless be accomplished in the mean time, proves that intermediate interests may fasten on the title which it is not in the power of the grantee's disagreement to unclasp. And in accordance with this principle *Thompson* v. *Leach* was finally determined. A deed of surrender by tenant for life, to a person in remainder, was held to bar intermediate contingent remainders, though the deed was disagreed to by the grantee, because it had in the mean time united the particular estate to a remainder, which though posterior in the order of vesting in interests, thus became prior in time as to vesting in possession; and because the two estates being once reunited, could never afterwards be disjoined. Apply the doctrine to the case before us. (By the transmission of the deed for acceptance to the assignee, the title instantly passed at law and the trust took effect.) How then could the equitable interest of the creditors, who were the only persons beneficially interested, be devested by the disagreement of the assignee in this case, more than could the legal estate of the wife, or that of the remainder-man in the cases cited? (Equity ever protects, where it can without disturbing a legal right, the interest of a *cestui que trust* from the acts of the trustee; and it would doubtless support the trust before us as being sufficiently created.)

But our statute would sustain it even if a chancellor would not. The Act of 1836 provides that the several courts having jurisdiction, shall have power to appoint assignees or trustees " where any sole assignee or trustee shall renounce the trust, or refuse to act under or wholly execute the same." Now a trust depending for its existence on the assent of the trustee to the grant in which it is declared, is, when renounced, in the very category defined in the first member of the clause; for it is a rule, to which there is said to be no exception, that there is no renunciation after accept-

[Read v. Robinson.]

ance, and consequently after assent to the grant of the legal estate. In *Chalmer* v. *Bradley*, (1 *Jac. & W.* 68), it was held that a trustee cannot renounce, having assented to the trust; and the same principle is to be found in *Doyle* v. *Blake*, (2 *Sch. & L.* 231), and *Ried* v. *Truelove*, (*Amb.* 417). If, having assented to it, he refuse to act under it, or wholly execute it, he falls within the provision made by the second member of the clause. There is no middle ground between renunciation and acceptance; and part of the statute would be inoperative did it not act on a case like the present.

But to constitute renunciation, there must be an express rejection or a tacit refusal to act; for there can be no renunciation where the assignee is ignorant of the existence of the paper. Was he ignorant of it in this case? The instrument was put into the hands of Joseph Amies, to be handed to Ward, who tendered it to the assignee, and it was rejected. According to the *Touchstone*, page 75, the naked deposit of a sealed instrument for no declared purpose, is not a delivery of it; and it might perhaps not be a tender to the grantee within the statute, did it require one. But here there was a purpose declared; and when we find the depositary handing the paper to the person to whom it was sent by the assignor, and that person presenting it to the assignee, a presumption arises from the nature of the case, that the tender was made by authority communicated through some channel which does not appear. The statute, however, does not call for a tender by authority: it is satisfied when there has been an express renunciation in fact, and for that reason the assignment ought to have gone to the jury.

The objection to the recording is unfounded. It was certainly competent for a party interested in the trust, to take the necessary steps to have it executed.

Judgment reversed, and *procedendo* awarded.