Brinkerhoee, J.
This is a bill of review, filed in the district court of Pickaway county, to reverse a decree of that court, at a special term in December, 1855, dismissing the original bill of the complainants in review, and reserved for decision in this court.
The object of the original bill of complaint is to charge the defendant, Olds, as trustee, under the act of March 14, 1838, for the benefit of all the creditors of Gephart & Wilson, with the proceeds of certain notes of Wilson Baker, given by him for goods sold to him by Gephai’t & Wilson.
These notes were made payable to Olds, and came into his hands under the circumstances here mentioned.
Prior to the 10th day of October, 1851, Gephart & Wilson were merchants, having two stores, one at Circleville, the other at Waverly. On that day they sold both of said stores to Wilson Baker, at certain rates and prices stipulated for by written *592 articles, exhibited as evidence in the case, according to which an invoice was to be made to ascertain the amount. By the same articles, Baker agreed on his part !t to execute to said Gephart & Wilson his notes for equal amounts, payable in six, twelve and eighteen months, from date of closing the invoice.”
On the 18th day of October, 1851, being the same day on which the making of the invoice was commenced, Gephart & Wilson delivered to Olds, an instrument of writing signed by them, but not signed by Olds, which, howuver, he received from them, and retained until it was disposed of as hereinafter stated. This paper is exhibited in the case, and is relied upon as the foundation of the alleged trust, which it is the object of the bill to charge against Olds. So far as material its terms are as follows :
“ We hereby transfer to Edson B. Olds, the indebtedness of Wilson Baker to us, for and on account of the stock of goods,” etc., “ which we have this day commenced invoicing, supposed to amount to some ten thousand dollars after deducting the amount for which said Baker is liable by reason of his indorsement for us, which liability amounts to some two thousand' dollars, which said Baker is to retain out of the purchase money of said invoice of goods — the balance, being the amount hereby transferred to said Olds,” etc. “ Said Olds, is, first, to pay himself the amount we owe him, and the amount for which he is liable to Marfield by reason of his indorsement for us, and the amount of. his acceptances for us to merchants in New York,” etc. “ After discharging all the above-enumerated liabilities, and the amount we owe the said Olds, as above referred to, any balance of the indebtedness of the said Baker hereby transferred, which said Olds shall receive from said Baker,, he is to pay to the following creditors of ours, pro rata, viz.; Foresman, Ehrnman, Bauder and McCoy. Any balance still remaining in his hands, said Olds is to pay pro rata, to D. C. Hyde & Oc., and Clark Work, etc., creditors of ours-^any further balance remaining in his hands he agrees to pay over to our order.”
*593 The invoice was completed on the 10th day of November; and the amount fell below what the parties anticipated.
• Immediately on the completion of the invoice, Gephart & Wilson, Olds and Baker, met and made a settlement. But, in this settlement it was found to be impossible to carry out the precise terms of the article of assignment as to the $2000, which, by the terms of the article of assignment, were to be retained by Baker, on account of his indorsement to one Mar-field, in favor of Gephart & Wilson. To this stipulation in the article of assignment, Baker declined to accede — probably for the reason, that the retention of this amount, in accordance with the article of assignment, might render him immediately and directly liable for the amount due Marfield— whereas by the terms of his purchase of the goods from Gephart & Wilson, he was required only to give his notes for their amount on time.
Thereupon an arrangement was made between the parties in pursuance of which—
1. Olds canceled, absolutely, his claims against Gephart k Wilson to the amount of $7559 63, including $4205 60 of notes, for Avhieh G. D. Roberts was liable.
2. He assumed and paid the debt of Gephart & Wilson to Marfield, for which he was before liable as their surety for $1550 00.
3. He assumed and paid to Marfield another debt of Gephart & Wilson, for which he was not before in any way liable, but for which Baker was liable as indorser, for $2000.
4. He assumed a debt of his son, M. L. Olds, to Gephart & Wilson, for which he was not before liable, to the amount of $168 88.
And the notes of Baker for the price of the goods, instead of being given to Gephart & Wilson and then transferred to Olds, were given directly to Olds. This settlement was indorsed on the back of the article of assignment, and the article, with its indorsements, was retained by Olds.
The testimony renders it clear, that at the time of making the assignment, Gephart & Wilson were utterly insolvent, and *594 the circumstances altogether show very satisfactorily that the assignment was made in contemplation of insolvency.
The act of March 14, 1853, “ declaring the effect of .assignments to trustees, in contemplation of insolvency,” provides “ that all assignments of property in trust, which shall be made by debtors to trustees in contemplation of insolvency, with- the design to prefer one or more creditors, to the exclusion of others, shall be held to inure to the benefit of all the creditors, in proportion to their respective demands, and such trusts shall be subject to the control of the courts, which may require security of the trustees for the faithful execution of the trusts, or remove them and appoint others, as justice may require.” 3 Curwen St. 2239.
Here was an assignment of property to a trustee, in con- - templation of insolvency, with the design, apparent on the face of the instrument, to prefer certain named creditors to the exclusion of others; and the case is clearly within the statute, sinless there is something dehors the instrument to withdraw it from the operation of the statute. The instrument of assignment was delivered by the assignor. to the . trustee, and by him accepted, and the act of assignment became perfect and complete.
It is said, however, in behalf of defendant, Olds that the indebtedness of Baker to the assignors, was not in law assignable. But it was assignable in equity; the subject of trusts is peculiarly a matter of equitable cognizance; and it is evidently to courts of equity that the statute refers, where it commits trusts of this character to the control of the courts.
Again, it is argued, that the stipulations of the article of assignment, as to the two thousand dollars to be left in Baker’s hands to pay Marfield, could not be carried out, by reason of Baker’s refusal to assent to them, and so the assignment fell to the ground and became inoperative. We do not think so. These stipulations were not an essential part of the assignment. These two thousand dollars were not assigned, and the stipulations in the article in respect to them related to a matter not embrac.ed in the assignment;- and as to those two *595 thousand dollars the parties were at liberty to make their own arrangements without disturbing anything embraced in the assignm ent.
It is further urged, that in the settlement which was made between the assignors, the assignee and Baker, the assignee assumed burdens which the terms of the assignment did not impose; and, therefore, he was at liberty to disclaim the assignment and resort to other measures for his security.' But, we think, that if the assignment was an act complete and operative, his assumption of-additional burdens was his own business, if not his own fault.
Again, it is urged that these new arrangements were made before any of the other creditors of the assignors had assented to, or asserted any claim under the assignment, and that, therefore, the immediate parties to the assignment were at liberty to abandon it.
It-is by no means clear from the evidence that the immediate parties to the assignment ever intended or attempted to abandon it, until long after the settlement, and after it -was discovered that the law made other parties to the assignment, and gave to its provisions an effect other than was apparent on its face; but if it were so, we do not see that it would make any difference in the rights of other creditoi’s. No assent of outside creditors was necessary to render the assignment operative. They — being either excluded from its benefits, or placed in a position of inferiority to preferred creditors — could not be expected ever to assent to the assignment according to its terms; but to the assignment according to its legal effect, the law assents for them. “ An assignment to a trustee for creditors, where it is delivered by the assignor into the hands of the assignee, -and is at once accepted by the latter, becomes immediately operative, and takes full effect as a transfer of¿the property.” Burrill on Assignments, 347. Read v. Robinson, 6 W. & S. 329; Klapp’s Assignees v. Shirk, 13 Penn. St. Rep. 589. And where the act of assignment is, by delivery and acceptance, made complete, the statute at onee seizes upon it, diverts its provisions into an equitable *596 Channel, and makes it “ enure to the benefit of all the creditors, in proportion to their respective demands.”
Original decree reversed, and decree for complainants.
Sutliee, O.J., and Peck, G-holson and Scott, J J., concurred.