## Supreme Court, Pennsylvania.

SCRANTON TRUST COMPANY AND SAVINGS BANK ET. AL.. (Defendants below, Appellants,) vs. MAURICE CLARK ET. AL. (Plaintiffs below, Appellees.)

1. The Scranton Trust Company and Savings Bank became insolvent by mismanagement. The charter provided that the directors of said corporation should not receive any deposits after the assets of said corporation shall have become depreciated in cash value below the whole amount of the deposits with said corporation and the debts of the same and fifty per centum of the capital paid in, without making the directors jointly and severally - ersonally liable to the depositors and creditors of said corporation for any deficiency existing after their remedies against said corporation shall have become exhausted. When the directors thereof discovered a, deficiency to the amount of several hundred thousand dollars they immediately resolved to go into liquidation. Afterwards the directors made an assignment of the assets of said bank to H. S. Pierce, then president and director. Held, First, that the assignment thus made to a director and president was not valid and was contrary to the banking laws of Pennsylvania. And second, in Pennsylvania there are only two kinds of banks recognized und r the State law ; one is known under the general head of banks, the other under the general head of savings institutions.

2 A bank is defined to mean a place of deposit for money. A savings institution is defined to be any institution in the nature of a bank formed for the purpose of receiving deposits of money.

3. In Pennsylvania as the law now stands except under Acts of 1861 and 1876, a receiver cannot be appointed, but one or more trustees may be selected to wind up the concerns of such bank.

IN EQUITY.   Appeal from Common Pleas of Lackawanna County, continuing preliminary injunction.

Opinion of the Court below by HANDLEY, P. J.

The plaintiffs in these proceedings complain and say, of the defendant, that the defendant is a corporation, and that she has her chief place of business in the City of Scranton, County of Lackawanna; that the business of said defendant corporation was to receive money on deposit from all persons who should offer the same; that for the security of the depositors, the said corporation was required to raise and form a capital of $100,000, the same to be divided into shares of one hundred dollars each, and one-tenth thereof to be paid in before the said corporation should commence business; that by law the said corporation could only hold such real estate as should be requisite for the accommodation and convenient transaction of her business, and such other real estate as she might find ne-

cessary to purchase at judicial sales or otherwise to secure debts due her; that the directors of said corporation could not receive from any person or persons, any deposits after the assets of said corporation "shall have become depreciated in cash value below the whole amount of the deposits with said corporation, and the debts of the same, and fifty per centum of the capital paid in," without making themselves "jointly and severally, personally liable to the depositors and creditors of the said corporation for any deficiency existing after their remedies against the said corporation shall have become exhausted."

That at a meeting of the stockholders, held at their banking house, in the City of Scranton, on the 21st of January, 1879, it was resolved to go into immediate liquidation, and the officers of said corporation were instructed to take immediate steps to that end; whereupon H. S. Pierce, President, and H. B. Phelps, Secretary, published an address to the depositors of said corporation, setting forth that over two-thirds of the stock being represented and three-fourths of the stockholders being present, it was recommended that such action be taken as shall put the company in liquidation at the earliest possible moment, and thereupon a resolution was passed putting the company in liquidation. The resources, it was alleged, amounted to $777,573.31, and its liabilities, was alleged, amounted to $699,541.61. Thus showing an excess over liabilities amounting to $77,771.69.

That the said H. S. Pierce and H. B. Phelps, having full knowledge of the resources and liabilities of said corporation, and well knowing her hopeless insolvency and inability to pay her depositors and creditors upon demand, unlawfully, fraudulently, and wickedly continued, for the space of two years previous to the 21st day of January, 1879, to receive deposits from the plaintiffs and her creditors, and that thereafter, they did, wrongfully and with intent to keep ignorant, mislead and deceive, utter and publish, as true, an address to the plaintiffs as aforesaid, at a time when they well knew that said Trust Company's liabilities were more than $275,000.00 in excess of her re-

sources; that the directors and officers of said Trust Company, having full knowledge of the insolvency and absolute bankruptcy of said company, did recommend and counsel an assignment of the property and effects to H. S. Pierce, in order to hinder and delay the plaintiffs and others in the collection of the money due and owing to them, and for the purpose, as they believe, of concealing and covering up illegal and fraudulent transactions in the administration of the affairs of said corporation; that said corporation is holding other real estate than such as is requisite for the accommodation and convenient transaction of her business, and such as she found necessary to purchase at judicial sale or otherwise to secure debts due her; that of the one hundred thousand dollars capital stock required to be raised and formed for the security of the depositors of said corporation, only $50,000 thereof has been paid in by the stockholders; that the directors, well knowing the insolvency of said defendant corporation, and that her assets had depreciated below the whole amount of her deposits, debts, and fifty per centum of her capital paid in, did, contrary to law, take and receive on deposit from the plaintiffs divers large sums of money, and other large sums of money from other depositors, which they have refused and still do refuse to pay; that the said corporation, well knowing as aforesaid, her insolvency, and that she would be compelled to suspend business, did, at or about the time she received from the plaintiffs the several large sums of money hereinafter named, corruptly attempt to enter into, and did enter into, an arrangement with certain of her creditors for the transfer of certain obligations in satisfaction of her indebtedness, thereby giving a fraudulent preference, and that the President, Cashier, Directors, and some of the stockholders, did also enter into corrupt and fraudulent arrangements with each other, whereby certain worthless stocks of banks and building associations, bonds, and other securities then held by them, should be assigned and transferred to said corporation in satisfaction of their individual indebtedness thereto.

The complaint further avers, that the said Trust Com-

pany by her officers, directors, stockholders, and agents, have been and are still using the funds of the said company tor corrupt and improper purposes, namely, for the purchase of deposits, notes, bills, drafts, obligations, and claims outstanding and held by the several creditors, at prices greatly below their face value; that with intent to hinder and delay and prevent a speedy collection of the moneys due her depositors, the said Trust Company maJe an assignment of her effects and property to H. S. Pierce, the President and one of the directors thereof in trust for the depositors, creditors, and stockholders, and that on her petition Elisha Phinney and George Fuller were appointed appraisers to take an inventory and make valuation ot said effects and property, and that said assignment was made by the officers of said Trust Company, *not* with intent to benefit the creditors of the said company, but for the purpose of fraudulently and wrongfully preventing the assets of the said company from being fully, speedily and fairly applied to the payment of her just debts, and to prevent said assets from being placed in the hands of an impartial and capable receiver.

That the said H. S. Pierce, the person selected and chosen as assignee of said Trust Company, shonld be removed. First, because he is a stockholder in said Company, and as such, is liable as a debtor to the depositors and creditors thereof for fifty per centum ot the amount of stock he holds therein. Second, because he is a director in said Trust Company, and as such director is jointly and severally and personally liable with the other directors thereof to the depositors, *after* their remedies agaiust the said Trust Company shall have become exhausted. Third, because he is President of said Trust Company, and as such is subject to criminal prosecution and liable to be deprived of his liberty. Fourth, because the said H. S. Pierce has not within thirty days from the date of the assignment, filed, in the office of the Prothonotary of the Court of Common Pleas of Lackawanna County, an inventory or schedule of the estate and effects assigned, with his affidavit as required by law; and fifth, because the said H. S.

Pierce has not given bond as required by law.

That the effects and property of the said Trust Company, consisting of real estate, stocks, bonds, mortgages, judgments, notes, bills of exchange, drafts, stamps, checks, safes, furniture, books and other matters, are worth, as valued by the appraisers appointed for that purpose, only the sum of $348,200.62. That said Trust Company, by reason of mismanagement and improper investments, has become hopelessly insolvent and unable to pay her debts, and had, at the time of her assignment, an indebtedness amounting to $699,541.62. And the plaintiffs further aver, that the said company is indebted to them personally for moneys deposited with her as follows, namely: Maurice Clark, $2,250.00; Edward Craig, $1,150.00; Patrick Kearney, $890,00; Owen Cafferty, $1,000.00; Catherine Atkinson, $290.00; Daniel Atkinson, $1,465.00; John Larkin, $205.61; William Rogan, $360.00; and Mary L. Jones, $460.00. That the nature and character of the effects and property of the said Trust Company are such as require the immediate attention and care of a receiver; that delay, such as will inevitably follow the appointment of an assignee in the interest and sympathy of the officers and stockholders of the defendant, cannot result otherwise than in disaster and loss and irreparable injury to the depositors and creditors; and that the nature and character of the assets are such, that if they be not disposed of at once, the loss will be far greater than if their sale were deferred for a better price. That unless the deed of assignment made by the defendants to the said H. S. Pierce should be decreed by the Court to be null and void and revoked, and the said Trust Company, her officers, attorneys, agents, servants, and assignees be restrained from proceeding under the said assignment, and a receiver appointed to take full charge and management of the effects and property of the said company, the remaining assets will be squandered and wasted and irreparable mischief and wrong done to the plaintiffs. The plaintiffs therefore pray:

*First*—That a decree may be made by the said Court

declaring the said assignment null and void, and also revoking the same.

*Second*—That an injunction may be granted enjoining and restraining the President, directors, cashier, assignee and other officers and agents of said Trust Company from exercising any of her corporate rights, and from collecting or receiving any debts or demands, and from paying out or in any manner transferring or delivering to any person or persons, than to such receiver as may be appointed, any moneys, property or effects of said Trust Company.

*Third*—That the said Trust Company may be enjoined to deliver to the receiver, to be appointed, all effects, property, title deeds, books, evidence of debts, mortgages, judgments, bills, notes, checks, stamps, money and securities of every description and nature whatever in her or their custody, or in the custody and keeping of any other corporation, person or persons for her or them.

*Fourth*—That a preliminary injunction may be granted enjoining and restraining the said Trust Company, her president, directors, officers, cashier, clerks, agents, assignee or other officer from exercising any of the powers given her, them, or any of them by law.

*Fifth*—That upon final hearing the said preliminary injunction may be made perpetual.

*Sixth*—That a suitable person may be appointed a receiver to take charge of the effects, sue for and recover debts and demands that may be due her; to dispose of the realty, effects, property, bonds, stocks, obligations, and other securities of every character whatever for the best price or prices that can be obtained for the same; and with the moneys and effects collected and made, to pay and satisfy *pro rata* the several depositors and creditors of the said Trust Company, and that the said receiver may have the same power, authority, obligations and duties incident to receivers appointed in cases of dissolution of partnership.

*Seventh*—That the plaintiffs may have such further and other relief in the matters aforesaid as the nature and circumstances of this case may require, &c.

Preliminary injunction, on motion, was awarded as prayed for and the usual time fixed for the hearing of this motion.

. On the 24th of May, 1879, when this motion was argued, H. S. Pierce, the President of the Trust Company; by-way of answer filed his affidavit, setting forth that he was formerly President of the said Trust Company; that he was present at a meeting of the stockholders, held at the banking room of said bank, on the 12th day of April, 1879, when it was decided to be for the best interest of depositors and other creditors that an assignment of all the real and personal property be made, and the directors were authorized to make such assignment; that they did make the same, which said assignment was duly recorded within thirty days thereafter in the office for recording deeds in Lackawanna County; that said assignment was made to him in accordance with a resolution of the Board of Directors, authorized, by a vote of a majority in number and interest of the stockholders. That appraisers were appointed by the Court, and that he caused to be made a true and correct inventory of the real and personal property of said Trust Company, which was filed in the Prothonotary's office; that he expected to append to said inventory his affidavit of its correctness, but that the appraisers filed the same without giving him notice thereof; that when he learned the inventory was filed he ordered a bond to be drawn by his counsel, and the same was drawn, but on account of the absence of two of his sureties he was unable to procure the signature of all the sureties thereto; that the signatures of said parties will be obtained as soon as possible and the same will be offered for approval; that he has caused another schedule to be made from the books of the bank, attached his affidavit to the correctness of the same, and filed it with the Prothonotary of said county.

That he firmly believes that the assets of said bank are largely in excess of the liabilities thereof; that he did not receive any deposits, nor knowingly allow any clerk or agent to receive deposits, knowing the insolvency of said bank; nor did he publish or make any statement wrong-

fully with intent to keep ignorant the stockholders, creditors or depositors of said Trust Company; nor has he directly or indirectly caused any fraudulent, incorrect or wrongful statement to be made.  Whatever statements were made have been taken from the books of the bank, and the valuation of the property contained therein was correct and true so far as the nature of the property and circumstances would allow; that the assignment was not made to conceal and cover up any illegal transactions, but that an equal and equitable distribution of the assets might be made to the creditors, to the end that the depositors and creditors may be paid in full; that said Trust Company does not hold any real estate other than that allowed by her charter; that he has not received to his knowledge any deposits knowing that the assets had depreciated below the whole amount of the deposits of said Trust Company; that he has not at any time entered into any corrupt arrangement with any of the creditors of said bank to satisfy her indebtedness to them, nor given any fraudulent preferences to any creditors; nor has he entered into any fraudulent and corrupt arrangement with any of the officers, or any one else, whereby securities have been or are to be assigned and transferred to said bank in satisfaction of the individual indebtedness thereto; that he has not used the funds of said bank for the purchasing of deposits or any claims against said bank; that the indebtedness of said bank is not $669,541.61, as set forth in the plaintiffs' complaint; that after the closing of said bank and before the making of the assignment ten per cent. of the depositors' claims were paid, and all depositors under $100.00 were paid in full to those calling for the same; that there are matters connected with the business of the estate of said bank that require immediate attention, and the further continuance of the injunction will result in great damage to said bank; that there are securities upon which he can secure double the amount fixed by the appraisers.

The affidavit of Mr. George L. Dickson shows that he is a stockholder of said bank to the extent of fifty shares;

that he is informed that H. S. Pierce has been made assignee of said institution, and that he is the proper person for said trustee; that he does not believe that the suspension of said bank has been caused by mismanagement nor by any wrongful or fraudulent acts of her officers, but has been caused by financial troubles, failures, and depreciation of property in the last six years.

The affidavit of Hon. Lewis Pughe shows that he is of the firm of Monies & Pughe, and that they are creditors of the Trust Company to the amount of $1,420.64; that he is informed that H. S. Pierce has been made assignee of said bank for the benefit of creditors, and believes he is the proper person for said trustee; that the suspension of said bank was not caused by mismanagement, nor by any wrongful acts of her officers, but said suspension and present insolvency has been caused by the financial troubles, failures, and depreciation of property during the last six years.

The affidavits of R. W. Luce and W. R. Storrs are to the same effect. The affidavit of H. B. Phelps, Secretary and Treasurer of said Trust Company, and the affidavit of J. S. McNulty, book-keeper, sustain the affidavit of H. S. Pierce.

There are several very important questions involved in these proceedings. But under our present view of this case, there are only two questions that we are called upon to decide at present, namely:

1. Whether the assignment made by the Trust Company is valid in law?

2. Whether an insolvent bank can make an assignment of the property of the bank to the President and director thereof?

The last question we will take up first: That Mr. Pierce can not be the assignee of the Trust Company there can be no doubt. The plaintiffs' bill of complaint, if true, shows that Mr. Pierce may be liable criminally for acts while acting as director and president, of omission and commission.

Then again, under the charter of the Trust Company as

stockholder and director, he may be called upon in a civil proceeding to answer for personal liability to the depositors.

In the case of Gunkle's Appeal, 12 Wright 13, where the Lancaster Bank made an assignment, and the creditors attempted to charge the assignee, who, by the way, was an officer of the bank, for not enforcing the individual liability of the stockholders, the Supreme Court held that by the general assignment these liabilities became vested in the assignee, who was bound to collect them, as well as any other assets of the institution. In this case the validity or the efficacy of the assignment or of this appropriation of the property of the bank was not contested by either the stochholders of the bank or creditors of the institution, but in behalf of certain creditors repeated efforts were made to use the agency of the trustee for the enforcement of the liabilities imposed upon stockholders. But the assignee always obtained leave of Court to discontinue such cases as were brought in his name.

Now, in the eyes of the law, how can "A" bring action against "A?" and if that cannot be done, how are the depositors of this bank going to be protected? The present assignee certainly will not do it; because it was under his administration the bank became insolvent and the depositors met their misfortune.

This institution was incorporated by Act of Assembly approved the 15th of April, 1869; P. L. 1869, p. 961. The second section empowers her to receive on deposit from all persons any sum of money. Such deposits to be paid to such depositors with interest in lawful money *when required during business hours.* It may be conceded that the Trust Company for some period of time prior to the closing of business and the making of the assignment, was not able or in a condition to comply with this part of her charter. She therefore went into liquidation. This of course, she had no authority to do, unless the depositors were paid in full. Discovering that she was acting outside of her charter, the assignment in question was made. Corporations may make assignments for the benefit of creditors,

and no case need be cited to sustain this proposition. But when a bank makes an assignment it must be made according to the banking laws of this State.

The banking laws of our State are so intermixed by new acts and the supplements thereto, that it requires great research to be able to point out the several kinds of banks and banking institutions intended and allowed to be created and do business in Pennsylvania.

In the case of the First National Bank of Clarion vs. Gruber, 9 Pittsb. Leg. J., 97, Agnew C. J., after the Court had agreed upon the opinion to be delivered in that case, gave his reasons *in extenso* why he concurred. He said: "If we examine the legislation of this State on the subject of banks, it will be found that only those known as "banks" or "bank institutions," in the language of the laws, are banks of issue. * * * When we read the act of 1850 we find it to be almost a repetition of the acts of 1814 and 1824. Many of the sections are nearly exact transcripts. All the banks since chartered by special acts are subject to the provisions of this act. The very language of the section (5), as well as the subsequent provision to which it refers, make it evident that it was intended to apply only to banks or banking institutions having the power to issue circulating notes as money. These provisions, and many others, in the fundamental articles are wholly inapplicable to savings and deposit banks. He then adds: "I am, therefore, clearly of opinion that the general bank act of 1850 does not embrace savings and deposit banks." Now it is well understood that the most learned judge may concur in an opinion of a full bench without giving his reasons, and be right; and he may concur and give reasons, and his concurrence will be correct, whilst his reasons may be faulty in many particulars.

What banks did the chief justice mean when he referred to "savings and deposit banks" and "savings deposit institutions?"

There are in the eyes of the banking world three kinds of banks, namely: Banks of deposit, banks of discount, and banks of circulation. The purpose and agency of a

bank of deposit is to receive and keep money for the depositor until he draws it out. A bank of discount is for the discounting of promissory notes and bills of exchange, or of loaning money upon bonds, mortgages, stock and other securities. A bank of circulation issues bills or notes of its own, intended to be circulating currency or medium of exchange instead of gold or silver. Though these different functions may be exercised separately by different institutions, some or all of them may also be exercised by the same corporation. 2. Potter's Corp. 530, § 445.

But it is well known that in Pennsylvania there are only two kinds of banks. One is known and treated under the general head or term of "Banks." The other under the general head or term "Savings Institutions."

To which of these two moneyed corporations was it intended the concurring remarks should apply?

If they were intended for "savings institutions" then the reasons given are correct. Savings institutions must have been intended, because the learned judge adds in his concurring reasons: "I venture to say no one familiar with the legislation of the State has ever thought the act of 1850 applied to these *minor* institutions until pecuniary astuteness developed the idea.

Now it must be borne in mind, the question before the Court in the Gruber case was the right of a State bank to charge and receive more than six per cent. interest. Under the act of 1839 it is declared that " it shall not be lawful for * * * saving institutions within this Commonwealth to charge or receive as interest more than the rate of six per cent. per annum on the sum loaned or discounted. 1 Purd, Dig. 154, § 151 ; Savings and Loan Co. vs. Conover, 5 Ph., Rep. 21. These were the *minor* banks intended to be guarded against, so that no astuteness might be able to evade or overcome this prohibitory clause concerning interest.

We find, however, in the statute creating the Trust Company much stronger reasons for holding that this bank falls under the institutions intended to be governed by the

act of 1850 than anything we might say of or concerning the proper place or head under which to locate the Trust Company.

The second section of the act incorporating the Trust Company, after stating the purpose of the act, adds these words: *"and to transact any other business transacted by banks in this Commonwealth."* This is certainly broad enough to authorize and warrant us in locating this bank in the family of banks intended, in certain cases, to be closed up under the acts of 1822 and 1850; and not to locate her in the family of savings or deposit institutions intended to be controlled by the act of 1839.

The Trust Company not alone received savings deposits, but also business deposits. In other words, she did a general banking business, such as transacted by banks in this State.

A bank is defined to mean a place of deposit for money. 2 Potter's Corp. 529, § 445; Morse on Banking, XXXVII.

A savings bank is defined to be any institution in the nature of a bank formed for the purpose of receiving deposits of money. Grant on Banking, 614.

If it is once established that there is no law in Pennsylvania under which proceedings may be commenced against insolvent banks by the depositors, and that there is no way to enforce the personal liability of the officers for their acts of omission or commission, then the quicker that fact is called to the attention of the Legislature the better it is for every citizen of this Commonwealth.

If the banking laws of this State do not apply to the State banks now doing business, then all that a dishonest man may do is to dress well, put on a pleasant smile, be kind to the people, attend all of the different churches, and gather in, by so doing, a million or more of the people's money, and when he finds that the tide of prosperity is receding, and the depositors have commenced to withdraw their deposits, simply announce "liquidation" and close in on about one-half million dollars, and when asked for the payment thereof, respond in the most haughty manner, "Get your money the best you can. Law me if you want

to; doubtless the judges of your courts would put me in jail if they could, but that they cannot do."

Now it was not the intention of the law-making power of this State to allow a man of this make-up to obtain the people's money and then refuse to pay it back. How else can depositors enforce their rights except only as the 38th, 39th, 40th, 41st, 42d, 43d, 44th, and 45th sections of the act of 1850, and the 1st and 2d sections of the act of 1867, allow them?

Is not the act of 1867 (1 Purd., Dig., 149, § 123-4) clear beyond doubt applicable to the banks now doing business in this State? That act declares that "whenever any bank *now* or that may *hereafter* be incorporated under *any law* of this Commonwealth, shall be declared fraudulently insolvent, either by the report of the auditors or the verdict of the jury, upon an issue framed by direction of the Court."

Now who are these auditors? and where do they come from? Why, they are the very auditors provided for by the 43d section of the banking laws of 1850. 1 Purd., Dig. 140, § 120. And where does the verdict of the jury come from? Why, in the manner pointed out by the 45th section of the same banking laws. 1 Purd., Dig. 149, § 122. Who can truthfully say that when the act of 1867 was passed there was a State bank in all Pennsylvania issuing or circulating her own notes, or any other State bank notes? And the presumption is, that this fact was fully known to each member of the Legislature. Why then pass the act of 1867, unless it was intended to apply to all banks *then* and *now* doing business in this State?

Again, the banking laws of 1822 and 1850, and 1867 must apply to all banks in this State, because, in the case of Burkholder vs. Beetems, Adm. 15 P. F. Smith, 496, it was held, where a cashier of the deposit bank, not a bank of issue, had sold certain stock there could be no recovery, the sale having been made by such cashier in violation of the banking laws of 1850. In the case of Young vs. Robertson, 6 Ph. Rep., 184, Judge Sharswood again applied the banking act of 1850.

Believing, therefore, that the banking laws of this State applied to the Trust Company the moment that institution became insolvent and unable to pay her depositors as the laws require. We will now call attention to portions of these laws bearing upon this case. Of course we have not overlooked the case of Rauschmeyer vs. The Scranton City Bank, 1 Legal Record, 365, before we arrived at these conclusions. The point, however, decided in that case has no bearing upon a case where inability to pay and insolvency is admitted. In that case insolvency was denied and ability to pay asserted and maintained.

The first section of the banking laws of Pennsylvania, 1        543, 1 P. D. 146 § 204, provides that " The board of directors of any banking company incorporated by any law or laws of this Commonwealth, or twenty stockholders thereof, being together proprietors of one-tenth part of the capital stock actually paid in, may at any time call a general meeting of the stockholders of such company, for the purpose of inquiring into the expediency of selecting five trustees to close the business of said institution, giving such notice of the same as is required for general meetings of their stockholders under their act or acts of incorporation, and specifying in such notice the object or objects of such meeting ; and if pursuant to such notice a majority of the stockholders, being together proprietors of one-half or more of the capital stock actually paid in, shall assemble at the time and place required by said notice, and shall determine to close the concerns of said institution, they shall proceed to elect five trustees, which election shall be conducted in all respects in the same manner as the elections of directors are required to be conducted by the corporate provisions of such institutions, and the law to regulate proxies passed the 28th day of March in the year of our Lord 1820." This section of the Banking law was once attacked, upon the ground that it was unconstitutional. But it was held to be constitutional; Bleakney vs. Farmers' and Mechanics' Bank, 17 S. & R. 64.

The deed of assignment made by the Trust Company to Mr. Pierce shows, that " whereas, at a meeting of the

stockholders of said corporation—a majority of the stockholders in interest and number voting in the affirmative—it was resolved 'that it is expedient to wind up the affairs of this Bank and make an assignment of all its estate real and personal under and subject to the conditions and provisions of law, and that the directors of this Bank be and they are authorized to take such steps to accomplish that purpose as to them may seem best.' And whereas at a meeting of the directors of said corporation it was resolved, 'that a general assignment of all the estate real and personal of this Bank be máde to Horatio S. Pierce, and that such assignment be executed under the corporate seal of this Bank and attested by the proper officers.' 'Now this indenture witnesseth, that the said Scranton Trust Company and Savings Bank, as well in consideration of the premises * * * do grant, bargain, sell, assign, transfer and set over unto the said Horatio S. Pierce, his heirs and assigns, * * * all the goods, chattels, and effects, and property of every kind, real, personal and mixed of the said The Scranton Trust Company and Savings Bank.' " It certainly cannot be asserted that the assignment made in this case was made as the law directs. The error was committed no doubt by proceeding under the wrong statute. The assignments provided for corporations and persons do not apply to banks.

The first section of the Banking law of Pennsylvania provides, that "Every banking corporation *hereafter* created by any special act of the General Assembly, and every bank hereafter rechartered, or the charter of which shall be hereafter extended or renewed by any such act of Assembly, *shall be subject o the provisions of this act.*" Purd. Dig. 128, § 5. It will be borne in mind that the Trust Company was created by special act of the General Assembly, and hence is subject to the Banking laws of 1850. *When a bank like the Trust Company has been so mismanaged that she is unable to pay her debts, it is the duty of all parties concerned, to follow the laws providing for cases of that nature.* What are the laws ? The 24th section of the Bank laws provides that, " If any such Bank shall at any

time fail or refuse to * * * pay its liabilities * * * upon demand being made at the banking house of said Bank during banking hours, such failure or refusal shall be deemed and held to be an absolute forfeiture of the charter of said bank." 1 Purd., Dig. 144 § 98.) Now the moment the Trust Company refused to pay its depositors according to the terms and conditions upon which such deposits were received it became the duty of such depositors to proceed as is provided by the 27th section of the act of 1850, which says that "Upon application to any Court of Common Pleas of the proper county, or a single judge thereof in vacation, on the oath or affirmation of any person, setting forth that he or she had presented to the proper officer or officers of such bank located within said county * * a certificate of deposit or other liability issued by the same, and demanded payment thereof, * * which said bank had refused or failed to pay, it shall be the duty of said Court if in session, or a judge in vacation to direct a citation to be issued by the Prothonotary of said Court to the President, Cashier or other officer of said Bank in the nature of a summons, which it shall be the duty of the Sheriff or Coroner of the county to serve forthwith, commanding the President, Cashier or other officer of said bank to attend at the time and place designated by the said Court or Judge, * * * and upon the hearing of the parties if the said Court or Judge shall be satisfied of the truth of said complaint, and that the provisions of the 20th section of this act have been wilfully violated, then the directors of the Bank shall make and execute, under their corporate seal, a general assignment of all the estate real and personal of the bank, to such person or persons as they shall select, subject to the approval of the Court of Common Pleas * * of the proper county. * * * * *Provided*, That the corporate powers of the bank shall cease and determine except so far as may be necessary for the following purposes to wit:

1. For the purpose of suing and being sued, and for continuing all suits and proceedings at law or in equity, pending for or against the bank.

2. For the purpose of making such assurances, conveyances and transfers, and doing all such acts, matters and things as may be necessary or expedient to make the said assignment or trust thereof effectual.

3. For the purpose of citing the said trustees to account and compelling them to execute the said trusts.

4. For the choosing of directors for the purpose of receiving and distributing among the stockholders of the said bank such surplus as shall remain after discharging all the debts of the bank."

The 28th section of the act of 1850, 1 Purd., Dig. 145, § 102, provides that "it shall be the duty of the said court, or any Judge thereof, on application and proof as aforesaid, if it shall be deemed necessary for the protection of the parties interested, to issue an attachment commanding the Sheriff * * forthwith to seize and take possession of the banking-house books, moneys, deposits, papers and effects thereof, and to deliver the same to the trustees when legally authorized to receive them; and if the directors shall not within ten days thereafter make an assignment as hereinbefore provided, the trustees appointed by the court shall by operation of law be vested with the same rights and powers as if such assignment had been made. *Provided*, That no person shall be appointed a trustee under this act who is a director or other officer of the bank, or who has been so one year previous thereto."

It will thus be seen that the plaintiffs in this case have not proceeded as the law directs, no more than did the defendants. Whenever a bank such as the Trust Company desires to make a voluntary assignment for the purpose of winding up the affairs of the bank, they may do so under the 29th section of the act of 1850, 1 Purd., Dig. 145, § 103. This section provides that "it shall be lawful for the directors of every bank, whenever it may be deemed expedient by a majority of the stockholders in number and interest to wind up the affairs of such bank, to make a general assignment of all the estate, real and personal, of the bank, subject to the conditions and provisions relating to assign-

ments by directors of banks provided by the 27th section of this act.

Now the 27th section, 1 Purd., Dig. 145, § 101, provides that such "assignment shall be recorded in the office of the Recorder of Deeds of the proper county within thirty days from the execution thereof; the said assignee or assignees before entering on the duties of their office, shall take and subscribe an oath or affirmation to execute the trusts confided to them with fidelity, which oath or affirmation shall be filed in the office of the Prothonotary of the proper county, and shall give such security as the said court may deem amply sufficient to secure the faithful execution of said trust; they shall proceed to sell at public sale all the real and personal estate of the said bank, and shall collect all the outstanding debts, and for this purpose may use the corporate name of the bank. *Provided, however,* That the said assignees shall once in every six months file an account of their receipts and disbursements in the office of the Prothonotary of said court verified by their oath or affirmation; they shall, at least once in every six months make a *pro rata* dividend of the balance in their hands among the creditors of the bank, who shall in pursuance of public notice given in such manner and form as shall be directed by the court, have made claim and delivered up the evidences of their claims, if such evidence be in writing, to the said assignees, and receive from the said assignees a certificate stating particularly the nature of the claim and the amount thereof."

We have, therefore, under the banking laws of this Commonwealth, two modes pointed out for closing out the affairs of insolvent banking institutions. One under the act of 1822 gives the board of directors absolute control of the affairs of such bank by the selection of five trustees as directed by this statute. The other, under the act of 1850, gives the depositor the right to proceed against the bank, and then if the directors fail to make an assignment within ten days thereafter, the trustees appointed by the court shall by operation of law be vested with the same rights and powers as if such assignment had been made.

We must, therefore, hold that the assignment made by the Trust Company is contrary to the banking laws of this State, and hence is void.

The law is, that in all cases where a remedy is provided, or a duty enjoined, or anything directed to be done, by an act or acts of assembly of this Commonwealth, the directions of the said acts shall be strictly pursued. 1 Purd., Dig. 58, § 5.

If it was the intention of the officers of this Trust Company to allow the depositors the right to obtain their money in the near future, or so much thereof as the assets will allow, then, when liquidation was agreed upon as the only remedy left, and insolvency discovered, it was the duty of such officers to follow the statutory mode pointed out in cases of this nature. And on the other hand, if is is the intention of the depositors to obtain their money in the manner pointed out to them by the law, then it is their duty to follow up with vigor the statutory remedies provided for depositors of a bank in the position of the Trust Company's depositors. The injunction now out will protect their money and prevent any further loss, but that injunction will not restore the money thus lost or tied up.

In Pennsylvania, as the law now stands; except under the act of 1861, 1 Purd., Dig. 120, § 22, and the act of 1876, P. L.; 1876, 179, § 27, we have no power or authority in cases growing out of the insolvency of banks by mismanagement or otherwise, to appoint a receiver. That power we may and often do exercise in cases growing out of the insolvency of corporations or persons. But while banks created and doing business under special or general statutes, are no doubt corporations for certain purposes, they are not, in the eyes of the law, corporations for all purposes.

We are not called upon now to say anything of or concerning the administration of the affairs of this bank, nor need we now say anything of or concerning the crimes charged under oath in the plaintiff's bill of complaint, against the officers of this institution. The questions growing out of the charges thus made, will no doubt come

up in due time, on the criminal side of our Court, and then, and not until then, will they be met and disposed of as the law demands.

It is sufficient to say however, that a great wrong has been wrought upon many a poor man, upon many a poor widow, and upon many an orphan, who confided their little all to the integrity and honesty of the Trust Company's administration. The quicker that wrong can be righted, either by the officers of this institution, or by the Judges of this Court, will man's confidence in man be restored.

The injunction we heretofore allowed in this case will have to be continued, so as to prevent any further waste of the money of the depositors, until such time as legal trustees are selected and appointed, as the banking laws require.

We, therefore, order and direct, the injunction heretofore granted, continued until the further order of the Court, subject to the modifications heretofore made to allow the President or assignee of said institution to protect the interests of said institution.

———

Assignments of error. (S. B. Price). The court below erred,

*First*, In holding that H. S. Pierce could not be assignee of the Scranton Trust Company and Savings Bank : Green's Brice's Ultra Vires, 124, 401 and 402 ; A. & A. on corporations, 163 and 209 ; Dana vs. Bank U. S., 5 W. & S. 246 ; Bank of S. vs. Bank of K., 1 Parsons 235 ; 1st Perry on Trusts 27 and 28 ; 1 Daniel's Chan. Pl. and Pr. 578; Com. vs. W. T. P. R.Co., 11 Casey 152.

*Second*, In deciding that said bank was not a savings institution : P. L. 1839 p. 515; P. L. 1834 p. 181; P. L. 1869 p. 961; First National Bank of Clarion vs. Gruber, 9 Pitts. L. J. 97; Potter's Dwarris on statutes 110-182; P. L. 1854, p. 468.

*Third*, In deciding that the said bank was subject to the provisions of the act regulating banks, &c., approved April 15, 1850 : Read vs. Robinson, 6 W. & S. 329; Seal vs. Duffy, 4 Pa. S. R. 277; 1st Perry on Trusts 2, 300 and 311;

Willard's Equity Jurisprudence 752; Sperring's Appeal, 21 Smith 11.

*Fourth, Fifth and Sixth,* In issuing and continuing the injunction: Dull vs. Hall, 1 Phila. 258; Machette vs. Hodges et. al., 1 Brewster 313; Noble vs. Becker et. al., 3 Brewster 550; Carpenter vs. Burden, 2 Parsons 24; High on Injunctions 24 and 25; Stine vs. Atkins, 1 Leg. Chron. 41; Reeves vs. Cooper, 1 Beasley N. J. C. R. R. 223; Kennedy vs. Burgin, 1 Phila. 441; Lowry vs. McIlvain 8 Phila. 278; Pfund vs. Berlinger, 9 Phila. 548.

Appellees cite the following authorities in their counter argument (J. H. Campbell.):

*First,* Beans vs. Bullett, 7 P. F. Smith 229; Balance et al vs. Miners Life Insurance Co., 6 Wright 444.

*Second,* 1st Bouvier 156; 2 Potter Corp. 529 Sec. 445; Morse on Banking, Chap. 38; P. L. 1869, p. 961. Sec. 2.

*Third and Fourth,* 3 Brevard 306; 7 Smith 541; Jacques vs. Weeks, 7 Watts 261; Reigart's Appeal 4 Barr 479.

*Fif h and Sixth,* Evans vs. Coventry, 5 D. G. M. & G. 911; Redmund vs. Enfield M'f'g. Co., 13 Abb. Pr. R. (N.S.) 332; Kerr on Receivers 80, note 1; Warren vs. Fake 49 How. Pr. R. 430; Jones vs. Holliday 37 Georgia 573; Reid vs. Reid 38 Id. 29; Crawford vs. Ross 39 Id. 44; Ware vs. Ware 42 Id. 408; Jenkins vs. Jenkins, 1 Page C. R. 243; Exparte Walker 25 Alabama 81; Lenox vs. Notrebe, 1 Hemstead 225; Hamberlain vs. Marble, 24 Miss. 586; Society of Shakers vs. Underwood, 9 Bush Ky. R. 614; 1st National Bank Republic vs. David Gregg, 10 Pitts. L. J. (N. S.) 26; Kerr on Receivers 21; Howe vs. Denel,43 Barb. 507; Robinson vs. Smith, 3 Page 222; Munt vs. L. & C. R. R. Co., 3 Eng. Law & Eq. 144; Murray vs. Vanderbilt, 39 Barber 140; Lawrence vs. Greenwich Fire Ins. Co., 1 Paige 587; Bloom vs. Union Banking Co., 4 W. N. C. 138.

PER CURIAM. In affirming this decree without giving an opinion on the merits as has been the practice of this Court for several years, we desire to say that if the want of an injunction affidavit had been objected in the Court below we would have reversed it. It is time that the proper practice in these cases should be understood and followed. It is easy to get any number of plaintiffs to swear to the best of their knowledge and belief to a formal instrument like a bill in equity. It is a very different matter to make an affidavit of the facts on deponent's knowledge, and if on information and belief when such information and belief is required.

Decree affirmed. Injunction continued and appeal dismissed at the cost of appellants.